METROPOLITAN TRUST CO. OF CITY OF NEW YORK v. TRUAX.

(Supreme Court, Appellate Division, First Department.    January 3, 1913.)

1. GUARANTY (§ 53*)—CONSTRUCTION AND OPERATION—VARIANCE.

Where an agreement guaranteeing the payment of a loan to be secured by certain collateral provided that interest should be paid semiannually, and that the loan should be made upon the principal's note for one year

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

and should be for a specified amount, and where the note given for the loan provided for the payment of interest quarterly in advance, that if the securities pledged should for any reason become unsatisfactory to the lender he could immediately sell and apply such securities on the debt, that in the event of the principal's insolvency the obligation should become immediately due and payable, and pledged the collateral not only for the amount stipulated in the guaranty but also for any other liabilities of the principal, there were such variances between the note and guaranty as rendered the guaranty void unless there was a subsequent valid ratification.

[Ed. Note.—For other cases, see Guaranty, Cent. Dig. §§ 64, 66; Dec. Dig. § 53.*]

2. GUARANTY (§ 53*)—VARIANCE—CONSTRUCTION—PRESUMPTION.

Where, in an action on an agreement guaranteeing the payment of a loan, it appeared that the loan was made some time after the execution of the guaranty agreement upon terms differing materially therefrom, the presumption was that the guarantors did not consent to the variance.

[Ed. Note.—For other cases, see Guaranty, Cent. Dig. §§ 64, 66; Dec. Dig. § 53.*]

3. EXECUTORS AND ADMINISTRATORS (§ 209*)—POWERS—CREATION OF LIABILITY.

Where an estate was not liable upon a guaranty agreement executed by the decedent, the administratrix could not create such liability by recognition of liability.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 736; Dec. Dig. § 209.*]

Appeal from Trial Term, New York County.

Action by the Metropolitan Trust Company of the City of New York against Alice Hawley Truax, as administratrix. From a judgment for plaintiff and denial of a new trial, defendant appeals. Reversed, and new trial granted.

See, also, 122 N. Y. Supp. 739.

Argued before INGRAHAM, P. J., and McLAUGHLIN, CLARKE, SCOTT, and DOWLING, JJ.

Lloyd Stryker, of New York City, for appellant.

Austen G. Fox, of New York City, for respondent.

SCOTT, J.   The defendant is sued, as administratrix of the estate of Chauncey S. Truax, deceased, upon a guaranty agreement signed by the said Truax.

On March 1, 1906, one Charles E. Eitz was desirous of borrowing the sum of $400,000 from the plaintiff, and in consideration of such loan and as an inducement to make it the above-mentioned Chauncey S. Truax (and a number of others) executed an agreement of guaranty, a copy of which is annexed to the amended answer. The agreement was a tripartite one, whereby the lender (not therein specified) agreed to loan to said Eitz, designated as the borrower, "upon his note for one year with interest at six per cent., payable semiannually, the sum of four hundred thousand dollars ($400,000), to be secured by the deposit as collateral security of five hundred thousand dollars ($500,000) par value of first mortgage six per cent. ten-year gold bonds of the Bulls Head Oil Works (a California corporation hereinafter

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

called the 'Company'), secured by mortgage to the Central Trust Company of California, trustee, and upon the further security of the agreement of the subscribers herein contained."

The subscribers, including said Truax severally, but not jointly, guaranteed to the lender the repayment of pro rata proportions of said loan with interest, but it was provided that no subscriber should be called upon to pay in the aggregate any more than the amount set opposite his signature with interest. In case the subscribers were called upon to pay any part of the principal, they were to be respectively entitled to receive from the lender a proportionate amount of the collateral security given for the loan in the ratio of $1,000 face value of bonds for each $800 so paid. The lender was authorized from time to time to detach and collect coupons from the bonds deposited as collateral, applying the coupon interest so collected to the payment of the interest due or to grow due upon the loan.

[1] The loan was made to Eitz upon his promissory note dated May 14, 1906. The terms of the loan, as recited in the note, varied in material particulars from the terms of the loan set forth in the guaranty agreement.

First. The note provided for the payment of interest "quarterly in advance." The guaranty agreement provided for the payment of interest "semiannually," without any stipulation that it should be paid in advance.

Second. The guaranty agreement provided that the loan was to be made to Eitz "upon his note for one year." The note provided that in case the securities pledged should decline in market value, or *for any reason* become unsatisfactory to the lender, the borrower agreed to deposit with the lender additional securities "to the satisfaction of the said company (lender) and in case of failure so to do forthwith this note shall become due and payable without demand of payment thereof, and the said company may immediately sell and apply the said securities in the manner and with the effect as hereinbefore provided."

It seems to require no argument to demonstrate that a note made under such conditions was not a note "for one year" such as Truax and the others agreed to guarantee.

Third. The note further provided that:

"In the event of the insolvency of the undersigned (Eitz) all the said obligations and liabilities shall at the option of the said company, become and be immediately due and payable without demand of payment."

Again it is apparent without argument that a note with this provision is not "a note for one year" such as the subscribers agreed to guarantee.

Fourth. The guarantors bound themselves only for the payment of the $400,000 loan to be made to Eitz, and it was a part of their agreement that, in case they were required to pay the loan or any part of it, they were to receive the whole or a proportionate part of the collateral deposited.

The note pledged the collateral not only as security for the particular loan covered by the guaranty, but also for "any other liability or liabilities" of Eitz, and authorized the sale of the collateral not only

upon the nonpayment of the $400,000, but as well upon the nonpayment of any other liability of said Eitz.

These discrepancies between the terms of the loan actually made to Eitz, and the terms to that which the subscribers agreed to guarantee, are manifest.

In addition, it appeared that plaintiff exacted an usurious rate of interest upon the loan, under the guise of commissions, and that this was done after the agreement of guaranty had been signed by Truax and the others.

Furthermore, the guaranty agreement provided that the interest coupons upon the bonds deposited as collateral should be detached and collected; the amount so collected being applied to payment of interest upon the loan. In violation of this provision it was shown that the plaintiff detached coupons to a large amount from the bonds so deposited, and, instead of collecting them, delivered them to Eitz or the company who had issued the bonds.

The loan was not paid at maturity, and thereupon all of the subscribers or guarantors, except Chauncey S. Truax, who had died meanwhile, signed an extension agreement whereby it was recited that said Eitz had applied for an extension of the loan until November 14, 1907, and in consideration thereof each of said subscribers consented to the extension of the time of payment, and agreed that, if so extended, his obligations under said agreement should remain in full force and effect. This agreement was signed by defendant as follows: "Estate of Chauncey S. Truax, by Alice Hawley Truax as administratrix."

The defendant offered upon the trial, in every conceivable way, to show that Chauncey S. Truax when he signed the guaranty agreement, and she herself when she signed the renewal agreement, had no knowledge of the transactions between plaintiff and Eitz, and had no knowledge of the actual terms on which the loan was made to Eitz or of the variances between these terms, and the terms of the loan which Truax agreed to guarantee. This proof was rejected and all necessary exceptions taken by defendant. We must assume for the purposes of this appeal that the defendant, if permitted, would have been able to prove what she offered to prove.

We think that there can be no doubt that the variances between the terms of the loan as contemplated by the guaranty, and the terms of the loan as made, were quite sufficient to destroy the efficiency of the underwriting agreement as a guaranty, and that the guarantors never became liable thereon to plaintiff, until they had executed the renewal agreement, which doubtless operated, as to those who signed it, as an estoppel in pais. It is familiar law that the contract of a surety or guarantor is strictissimi juris, and that he cannot be held beyond the terms of his contract, or for an obligation differing from that which he undertook to guarantee, and it is wholly immaterial whether the deviation harms him or adds to the burden of his obligation if he has not assented to it. Grant v. Smith, 46 N. Y. 97; Barns v. Barrows, 61 N. Y. 39, 42, 19 Am. Rep. 247; Paine v. Jones, 76 N. Y. 278; Evansville Bank v. Kaufmann, 93 N. Y. 273, 45 Am. Rep.

204; Creamer v. Mitchell, 162 N. Y. 486, 56 N. E. 977; Shipman v. Kelley, 9 App. Div. 321, 41 N. Y. Supp. 328; Guardian Trust Co. v. Peabody, 122 App. Div. 648, 107 N. Y. Supp. 515, affirmed 195 N. Y. 544, 88 N. E. 1120.

We think it quite clear, therefore, upon the evidence in the case, and upon that which we must assume, that defendant could have produced if permitted, that Chauncey S. Truax, defendant's decedent, never became liable to plaintiff upon the guaranty agreement, and that his estate was not so liable when his co-guarantors and this defendant signed the extension agreement.

[2] Indeed, that conclusion is compelled as the evidence stands, without regard to the excluded testimony, because the documents show on their face that the note was made some time after the guaranty agreement was executed, and that the variances above referred to existed. Upon these facts alone the presumption would be that the guarantors did not consent to the variances, and the burden to show the contrary would rest upon plaintiff.

[3] Having arrived at the conclusion that the estate of Chauncey S. Truax was not liable upon the guaranty when the original loan matured, it follows that it was not competent for his administratrix to create a liability on the part of the estate by agreeing to continue what she doubtless assumed to be a liability, but which in fact was not. The case is similar to those in which a claim against a decedent has been barred by the statute of limitations. In such cases it is the well-settled rule that executors or administrators have no power to use the funds of the estate to pay claims so barred, and that, if they do so, the claim paid will not be allowed upon an accounting. Butler v. Johnson, 111 N. Y. 204, 18 N. E. 643; Spicer v. Raplee, 4 App. Div. 471, 38 N. Y. Supp. 806; Hamlin v. Smith, 72 App. Div. 601, 76 N. Y. Supp. 258. If an executor or administrator cannot lawfully pay such a claim out of the funds of the estate, he certainly cannot validly create an obligation so to pay it.

The defendant relies entirely upon Metropolitan Trust Co. v. Skitt, 139 App. Div. 928, 124 N. Y. Supp. 51, affirmed 205 N. Y. 561, 98 N. E. 1108, a case which arose under the same guaranty and extension agreements. It is to be distinguished from the present case, however, by the circumstance that the defendant Skitt was alive when the original loan became due and personally executed the extension agreement.

Judgment and order reversed, and new trial granted, with costs to the appellant to abide the event. All concur.