W. W. Kimball Co. vs. Baker and another, imp.

*February 11 — March 3, 1885.*

*Suretyship: Consignments in excess of stipulated amount.*

A bond in the penal sum of $1,000 guaranteed that S. & B. should faithfully account for all goods consigned to them as agents of the obligee, "as per the terms of the within contract." The contract provided that S. & B. "will at no time order [goods] that shall exceed $600 in amount before returns are made." *Held*, that such provision of the contract was for the benefit of the sureties in the bond, and the unpaid consignments to S. & B. having exceeded $600, the sureties were released from all liability on the bond.

APPEAL from the Circuit Court for *Marinette* County. The following statement of the case was prepared by Mr. Justice CASSODAY:

This is an action upon a bond executed by Shadboldt & Burbank, as principals, and the respondents, *Baker* and *Fridstein*, as sureties, to the plaintiff, in the penal sum of $1,000, reciting, in effect, that Shadboldt & Burbank had been appointed the agents of the plaintiff at Marinette "for the purpose of selling for and remitting the proceeds of such sales, all goods consigned to such agents, *as per the terms of*

*the within contract;*" and conditioned that "if such agents shall in all things, with honesty and fidelity, discharge their said duties as agents of" the plaintiff, "and at all times, on demand, produce and deliver to said" plaintiff "all goods consigned to him [them], or the cash proceeds from the sale of the same, then this obligation to be void, otherwise to remain in full force and effect."

The "within contract," mentioned in the bond, was written and printed on the back of the bond, and in the form of a proposition from Shadboldt & Burbank, among other things, to the following effect: That they would take the plaintiff's pianos and organs on consignment on the following terms: "In consideration of having the exclusive agency for the sale of said instruments for Marinette, Fort Howard, and Green Bay, (1) I will order from and sell exclusively for you. (2) Will make returns of all instruments ordered within sixty days from shipment. (3) Will pay you in cash for goods as fast as sold, or in approved paper. (4) *I will at no time order stock or instruments on sale that shall exceed* $600 *in amount before returns are made.* (5) . . . In case returns are not made in sixty days from shipment, I will pay eight per cent. interest until returns are made, and instruments remaining on my hands longer than sixty days shall be subject to your order. . . . Or this contract may be terminated by either party at any time, and any stock on hand subject to your order. (6) All goods returned to be passed to our credit at ninety per cent. of original bill. . . . (7) I will return you a monthly statement of all instruments received and sold, and make prompt returns in cash as fast as sales are made." The above proposition was accepted by the plaintiff, in writing thereunder, in these words: "Sir: *Your contract or proposal, as above, we accept.*"

These written instruments were set out in full in the complaint, which also alleged, in effect, the incorporation of the

plaintiff; the partnership and business of Shadbolt & Burbank; the shipments of the plaintiff to Shadbolt & Burbank under the contract; the failure of Shadbolt & Burbank to account for or return to the plaintiff a portion of the instruments ordered by them and received from the plaintiff, to an amount exceeding $1,700, at the fixed and agreed value thereof; that more than sixty days had elapsed since any shipment; that more than sixty days prior to the commencement of the action the plaintiff had ordered all instruments unaccounted for or not returned, to be returned to the plaintiff, or their respective prices paid; but that Shadbolt & Burbank had not in any way accounted for any of said instruments, or returned any of them to the plaintiff. Judgment was demanded for $1,000, and costs. To that complaint the sureties demurred, on the ground that the complaint did not state facts sufficient to constitute a cause of action against them. From the order sustaining the demurrer the plaintiff appeals.

For the appellant there was a brief by *Webster & Brazeau*, and oral argument by *Mr. Webster*: Notwithstanding the fact that the plaintiff company allowed the unpaid consignments to exceed $600, yet the sureties were liable for the amount named — *Seller v. Jones*, 16 Mees. & W. 112; *Gee v. Pack*, 33 L. J. Q. B. 49; *Backhouse v. Hall*, 6 B. & S. 507; 34 L. J. Q. B. 141; 3 Addison on Contracts (Morgan's Am. ed.), sec. 1122,— unless the contrary *clearly* appears to have been the intention of the parties. *Parker v. Wise*, 6 M. & S. 246; *Gordon v. Rae*, 8 El. & Bl. 1087. This was not the intention of the parties, as is shown by the penalty having been fixed at $1,000. In determining the intention, doubtful language will be taken most strongly against the guarantor. *Douglass v. Reynolds*, 7 Pet. 122; *Drummond v. Prestman*, 12 Wheat. 515; *Lanusse v. Barker*, 3 id. 148; *Miller v. Stewart*, 9 id. 702.

For the respondents there was a brief by *Fairchild &*

*Fairchild*, and oral argument by *H. O. Fairchild*. They cited, in addition to the cases cited in the opinion: *Stull v. Honce*, 62 Ill. 52; *Chapman v. McGrew*, 20 id. 101; *Myers v. First Nat. Bank*, 78 id. 257; *Phillips v. Singer Mfg. Co.* 88 id. 305; *General Steam Nav. Co. v. Rolt*, 95 Eng. C. L. 550; Brandt on Suretyship, 464.

CASSODAY, J. The contract and bond were parts of the same transaction, and must be construed together as one instrument. *Gillmann v. Henry*, 53 Wis. 468. By the acceptance of the contract and bond the plaintiff took upon itself every duty and obligation implied in either. Construing the two instruments together, we think the plaintiff, by accepting the contract, and as obligee in the bond, impliedly agreed with the sureties that it would at no time fill orders to an amount exceeding the $600 before returns were made. So construed, that clause would seem to have been put in the contract for the protection of the sureties. The plaintiff could not be injured by receiving such excessive order. It might by filling it; but the filling of it would at all times be optional with the plaintiff, to whom the state of the account would necessarily be known. With the sureties it was different. They could not know that such excessive order would be made, nor, if made, that it would be filled by the plaintiff. They had the right to rely upon the plaintiff's implied undertaking not to fill such excessive order if made. Confessedly, the plaintiff filled such orders to an amount exceeding $1,700. It is claimed on the part of the sureties that they were thereby entirely released. Whether this is so or not is the principal question to be determined.

It is elementary that sureties are favorites of the law, and have a right to stand upon the strict terms of their obligation when ascertained. Beyond the burdens thus taken upon themselves, they are not bound. Brandt on Suretyship, § 79. We must assume, from the record, that the undertaking

upon the part of the sureties was gratuitous, and as sureties merely, without any interest in the subject matter of the contract, and without any counter security.  This being so, they .are under no moral obligation to pay the debt of their principals.  Their principals might be held upon an implied contract, but there can be no implied liability to charge the sureties.   They are only bound to the extent of their agreement, and only by reason of their agreement.   Such is the settled rule.   *Ludlow v. Simond*, 2 Caines' Cas. 29; Brandt on Suretyship, § 80; *Smith v. Lockwood*, 34 Wis. 77, 78; *Jenkins v. Gunnison*, 50 Wis. 393.

The question here presented was ably discussed on both sides, and numerous authorities cited.   The seeming confusion among the authorities does not arise from any difficulty in ascertaining the rule, but in its application to a given state of facts.   The intention of the parties, as ascertained from the writings creating the obligation, must, in all cases, prevail.   When the only limitation is upon the extent of the surety's liability, then there is no difficulty in holding the undertaking to be a continuing guaranty to the extent so limited.   *Mason v. Pritchard*, 12 East, 227; *Parker v. Wise*, 6 Maule & S. 239; *Hitchcock v. Humfrey*, 6 Scott, N. R. 540; *Seller v. Jones*, 16 Mees. & W. 112; *Gordon v. Rae*, 8 El. & Bl. 1065.   A casual reading of *Parker v. Wise* might leave the impression that the limitation there was not restricted to the extent of the surety's liability, but extended to the advances to be made.   A careful reading, however, especially of the condition of the bond, will, it is believed, reveal the fact as there held, that it was the intention to bind the surety absolutely for the prior indebtedness, and for any balance that might at any time be due on future advances, "not exceeding in the whole" the amount named. The learned lord chief justice, writing the opinion in that case, expressly adopted "to their full extent the positions" taken, "that a surety ought not to be bound beyond the

scope of his engagement, and that this is to be sought out from the whole context taken together, and that . . . the condition shall be taken with reference to the recital, and may be explained and restrained by it."

Here, by the express language of the bond, the guaranty only extended to "goods consigned . . . as per the terms of the written contract," which, as we have seen, forbade any shipments in excess of a certain amount before returns of all previous shipments were made. Certainly there can be no liability for shipments made in violation of the contract thus imported into the bond by way of recitals. *Sanger v. Baumberger*, 51 Wis. 592; *Grant v. Smith*, 46 N. Y. 93; *Fond du Lac v. Moore*, 58 Wis. 170; *Thomas v. Olney*, 16 Ill. 53; *Myers v. First Nat. Bank*, 78 Ill. 257. The plaintiff having thus violated its engagement with the sureties, as recited in the bond, was no longer in a position to recover against them for any breach, especially as the breach complained of might never have occurred had no such excessive shipment been made. Whenever it is found, from the whole instrument taken together, that it was the intention of the parties that the surety should not be bound at all if the advances to be made should exceed the amount named, and they do exceed that amount, then the courts necessarily hold that the surety was thereby released. *Farmers' & M. Bank v. Evans*, 4 Barb. 487; *Ryan v. Trustees*, 14 Ill. 20; *Finney v. Condon*, 86 Ill. 78; *Burt v. McFadden*, 58 Ill. 479; *Bragg v. Shain*, 49 Cal. 131; *Victor S. M. Co. v. Scheffler*, 61 Cal. 530. The facts here bring the case within this rule. But the two classes of cases mentioned do not differ in principle. They turn on the intention of the parties as found from the writings in a given case. Brandt on Suretyship, § 103.

*By the Court.*— The order of the circuit court is affirmed.